UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

Nº 13-cv-5104 (JFB) (WDW)
_____

NORMA GONSALVES, ET AL.,

Plaintiffs,

VERSUS

THE NEW YORK STATE BOARD OF ELECTIONS AND THE NASSAU COUNTY BOARD OF ELECTIONS,

Defendants.
_____

**MEMORANDUM AND ORDER**
October 2, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Norma Gonsalves, along with fifty-five other individuals (the "plaintiff candidates"), are candidates for various public offices throughout Nassau County. Each plaintiff candidate has been validly nominated as a candidate of a political party, as well as a candidate of the Tax Revolt Party, which is defined as an independent body under New York Election Law.[1] On September 13, 2013, the plaintiff candidates, along with voter Raquan Webster (the "plaintiff voter") (collectively, "plaintiffs"), brought this action against the New York State Board of Elections (the "State Board") and the Nassau County Board of Elections (the "County Board"), alleging that New York State Election Law § 7-104 violates their rights under the First and Fourteenth Amendments. Plaintiffs simultaneously moved for an Order to Show Cause, seeking a preliminary injunction and a temporary restraining order. The Republican Commissioner of the County Board, Louis G. Savinetti ("Savinetti"), supports plaintiffs' motion, and the State Board takes no position with respect to the merits of the complaint. The Democratic Commissioner of the County Board, William T. Biamonte ("Biamonte"), filed a memorandum of law in opposition to plaintiffs' motion. The New York State Attorney General, on behalf of the State of New York (the "State"), has also

---

[1] In their reply memorandum of law in support of the motion for a preliminary injunction, plaintiffs withdraw all claims regarding twenty of the plaintiff candidates because the nominating petitions for those individuals were determined to be invalid, and, thus, they are no longer valid nominees of the Tax Revolt Party. (Reply Mem. of L. in Further Supp. of Pls.' Mot. for a TRO & Prelim. Inj. ("Pl.'s Reply") at 1 n.3.)

intervened in this action, arguing that plaintiffs' motion should be denied.

As set forth in more detail *infra*, New York State allows fusion politics, whereby a candidate that has been nominated by more than one party or independent body may appear on a ballot multiple times, and all votes for that candidate are pooled in determining the results of the election. Pursuant to Section 7-104, on a typical ballot in Nassau County, the leftmost column lists the names of political parties and independent bodies, and each adjacent column lists the candidate nominated by that party or independent body for each election. When a candidate has been nominated by two or more political parties, as well as an independent body, the candidate's name appears only in the lines associated with the political parties that have nominated her. The independent body does not receive its own ballot line; instead, the independent body's name and emblem appears next to the candidate's name on a political party's ballot line. Plaintiffs argue that this scheme, which does not require a separate ballot line for the Tax Revolt Party in every instance in which it has validly nominated a candidate for public office, violates the First and Fourteenth Amendments.

For the reasons set forth below, the Court denies plaintiffs' motion for a preliminary injunction and a temporary restraining order because it is clear that Section 7-104 does not violate the First and Fourteenth Amendment, either facially or as applied to the facts of this case. Specifically, the Court finds that the burdens placed on the plaintiff candidates and the plaintiff voter are not severe. Because the State's expressed interest in minimizing ballot confusion and promoting ballot integrity outweighs the non-severe burdens placed on the plaintiff candidates and the plaintiff voter, the Court concludes, based upon the record before it, that the statute does not violate plaintiffs' First and Fourteenth Amendment rights. Plaintiffs' motion must fail because they have not demonstrated a likelihood of success on the merits or even sufficiently serious questions going to the merits making them a fair ground for litigation.

I. BACKGROUND

A. Factual Background

The following facts are taken from the complaint, as well as the parties' submissions to the Court.

The terms "party" and "independent body" are defined terms under New York election law. A party is "any political organization which at the last preceding election for governor polled at least fifty thousand votes for its candidate for governor." N.Y. Elec. Law. § 1-104(3). An independent body is "any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a party as herein provided." *Id.* § 1-104(12).

New York election ballots are formatted as a grid. For example, on a typical ballot in Nassau County, the leftmost column will be comprised of the names of parties and independent bodies, and the top row will list each election that a voter has the option of casting a ballot for. *See id.* § 7-104(3)-(4). Candidates for each elected office appear adjacent to the party or independent body that has nominated them.

New York State allows fusion politics, whereby a candidate that has been nominated by more than one party or independent body may appear on a ballot multiple times, and all votes for that candidate are pooled in determining the

2

results of the election. A candidate nominated by multiple parties will appear in the row of each party that nominated her. *Id.* § 7-104(4)(b).

However, the Election Law becomes more complicated when a candidate has been nominated by a party *and* an independent body. If a candidate has been nominated by only one party and one or more independent bodies, the candidate's name appears twice, once in the row associated with the party that nominated her and once in a row associated with an independent party. If a candidate has been nominated by multiple political parties and at least one independent body, the candidate's name appears in the rows associated with each nominating political party, but no separate line associated with the independent body is created on the ballot. Instead, the independent body's name and emblem is printed next to the candidate's name alongside one of the political parties that nominated the candidate. Moreover, under Section 7-104, where the independent body has obtained a separate ballot line – because it has nominated at least one candidate for an elected position on the ballot who does not meet the above-referenced criteria for use of the emblem – the other candidates for that independent body who do meet the criteria for an emblem still do not appear on the independent body's line and simply maintain the emblem on a political party's line, thereby leaving a blank space for that particular elected office in the column for that independent body.[2] *See id.* § 7-104(4)(c)-(d). According to the New York Court of Appeals, this statute "expresses a continuing legislative policy of preventing the major party candidates from pre-empting

---

[2] The full text of Section 7-104(4) is as follows:
(a) The names of all candidates nominated by any party or independent body for an office shall always appear in the row or column containing generally the names of candidates nominated by such party or independent body for other offices except as hereinafter provided.
(b) When the same person has been nominated for an office to be filled at the election by more than one party, the voting machine shall be so adjusted that his or her name shall appear in each row or column containing generally the names of candidates for other offices nominated by any such party.
(c) If such candidate has also been nominated by one or more independent bodies, his or her name shall appear only in each row or column containing generally the names of candidates for other offices nominated by any such party and the name of each such independent body shall appear in one such row or column to be designated by the candidate in a writing filed with the officer or board charged with the duty of providing ballots, or if such person shall fail to so designate, the names of such independent bodies shall appear in such row or column as such officer or board shall determine.
(d) If any person shall be nominated for any office by one party and two or more independent bodies his or her name shall appear on the voting machine twice; once in the row or column containing generally the names of candidates for other offices nominated by such party, and once in the row or column containing generally the names of candidates nominated by the independent body designated by such person in a writing filed with the officer or board charged with the duty of providing ballots and in connection with the name of such person in such row or column shall appear the name of each independent body nominating him or her or, if such person shall fail to so designate, the name of such candidate and the names of such independent bodies shall appear in such row or column as such officer or board shall determine.
(e) If any person is nominated for any office only by more than one independent bodies, his or her name shall appear but once upon the machine in one such row or column to be designated by the candidate in a writing filed with the officer or board charged with the duty of providing ballots, or if the candidate shall fail to so designate, in the place designated by the officer or board charged with the duty of providing ballots, and in connection with his or her name there shall appear the name of each independent body nominating him or her, but, where the capacity of the machine will permit, the name of such person shall not appear or be placed in a column or on a horizontal line with the names of persons nominated by a party for other offices.

3

the whole ballot through the device of setting up independent political bodies" because, without this limitation, parties could flood the ballot (by setting up various independent bodies) and have their candidate appear *ad infinitum* on the ballot. *Battista v. Power*, 16 N.Y.2d 198, 201 (1965) (upholding constitutionality of predecessor to Section 7-104).

The Tax Revolt Party is an independent body under New York Election Law. (Compl. ¶ 4.) Plaintiffs state that the "Tax Revolt Party has a long history in the State of New York, extending back to the 1980's and 1990's where independent bodies [used] names such as 'Tax Cut Party,' 'Tax Revolt Party' and 'Tax Cut Now.'" (*Id.* ¶ 5.) According to Biamonte, the Tax Revolt Party is "a *de facto* arm of the Republican Party in Nassau County" and was "invented as a method for the Nassau County Republican Party to support the candidacy of the Republican Party's nominee, plaintiff candidate Edward P. Mangano, for the public office of Nassau County Executive in the 2009 general election." (Mem. of L. in Opp'n to Pls.' Mot. for a TRO & Prelim. Inj. ("Biamonte Opp'n") at 3-5.)[3]

### B. Procedural History

On September 13, 2013, plaintiffs filed the complaint in this action, as well as a motion for a preliminary injunction and temporary restraining order. The Court denied plaintiff's motion for a temporary restraining order for the reasons set forth on the record at the September 13, 2013 conference. On September 18, 2013, the Court granted the State's motion to intervene to defend the constitutionality of the Election Law. On September 20, 2013, the State Board filed an answer, taking no position on the constitutionality of the statute. Also on September 20, 2013, Savinetti filed an answer, as well as a memorandum of law in support of plaintiffs' motion, and the State and Biamonte filed separate memoranda in opposition to plaintiffs' motion. Plaintiffs filed a reply in support of their motion on September 23, 2013. The Court held an order to show cause hearing on September 24, 2013. The Court has fully considered all of the arguments of the parties.

### II. DISCUSSION

### A. Preliminary Injunction Standard

"The preliminary injunction 'is one of the most drastic tools in the arsenal of judicial remedies.'" *Grand River Enters. Six Nations, Ltd. v. Pryor*, No. 02–CV–5068, 2006 WL 1517603, at *6 (S.D.N.Y. May 31, 2006) (quoting *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985)). In order to prevail on a motion for a preliminary injunction, a party must establish: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (citation and internal quotation marks omitted)). "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d

---

[3] Although the parties strenuously debate whether the Tax Revolt Party is a "sham" independent body, the Court need not decide this issue because, even assuming that the Tax Revolt Party is not an arm of the Republican Party for purposes of the motion, plaintiffs have not demonstrated that the restrictions imposed by Section 7-104 violate the Constitution. Thus, this issue is not material to the Court's analysis and is, therefore, not addressed in this Memorandum and Order.

4

Cir. 1989) (citation and internal quotation marks omitted). A preliminary injunction is not appropriate where monetary damages will serve as adequate compensation. *Id.* "The law in this circuit requires a showing that irreparable damages are likely, not merely possible." *Iron Mountain Info. Mgmt., Inc. v. Taddeo*, 455 F. Supp. 2d 124, 132 (E.D.N.Y. 2006).

### B. Merits[4]

"All election laws necessarily implicate the First and Fourteenth Amendments." *Dillon v. N.Y. Bd. of Elections*, No. 05 CV 4766, 2005 WL 2847465, at *3 (E.D.N.Y. Oct. 31, 2005); *see also Prestiga v. O'Connor*, 178 F.3d 86, 87 (2d Cir. 1999) (per curiam) (analyzing whether a New York election law violates "the freedoms of speech and association guaranteed by the First and Fourteenth Amendments"). Although "[t]he First Amendment protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas, . . . it is [] clear that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357-58 (1997).[5]

In determining the constitutionality of a state's election law, a court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). "Under this standard, the rigorousness of [the] inquiry . . . depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.* "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons*, 520 U.S. at 358 (citations and internal quotation marks omitted). Thus, this Court must first determine the severity of the restriction imposed by Section 7-104, and then engage in a balancing test to determine whether the "state's expressed interests" are "compelling enough to justify the burden on plaintiffs' rights." *Green Party of N.Y. v. N.Y. Bd. of Elections*, 389 F.3d 411, 421 (2d Cir. 2004).

---

[4] The Court assumes for purposes of this motion that plaintiffs could establish irreparable harm in the absence of an injunction or that the balance of hardships tips decidedly in their favor. However, for the reasons set forth below, the Court concludes that plaintiffs have not demonstrated a likelihood of success on the merits, or even sufficiently serious questions going to the merits to make them a fair ground for litigation.

[5] "In some settings, it is necessary to distinguish between, on the one hand, First Amendment speech and association claims and, on the other, Equal Protection claims. But where, as here, the challenged election laws place burdens only on minor political parties, these separate claims tend to coalesce." *Dillon*, 2005 WL 2847465, at *5. In their motion papers, the parties in this action analyzed the First and Fourteenth Amendment claims under one standard. At oral argument, plaintiffs' counsel made an Equal Protection argument that did not implicate the First Amendment, and, for the reasons discussed *infra*, that argument is without merit. Therefore, the Court generally analyzes the First and Fourteenth Amendment claims in this case under the single standard articulated by the Supreme Court.

5

1. Severity of the Burdens

Plaintiffs argue that Section 7-104 places severe burdens on their First and Fourteenth Amendment rights. First, the plaintiff candidates argue that the law "impairs their ability to associate with other Tax Revolt Party candidates, and to be identified as clearly as possible as a candidate of the Tax Revolt Party." (Mem. of L. in Supp. of Pls.' Mot. for a TRO & Prelim. Inj. ("Pls.' Mem.") at 8.) Second, plaintiffs claim that it interferes with the ability of voters to exercise their right to free expression by voting for a candidate "under the Tax Revolt Party banner." (*Id.*)[6]

Based on the Supreme Court's decision in *Timmons*, this Court finds that the restrictions imposed on the plaintiff candidates and the plaintiff voter are not severe. In *Timmons*, the Supreme Court held that Minnesota's election laws, prohibiting a candidate from appearing on the ballot as the candidate of more than one party, did not violate the First and Fourteenth Amendment. 520 U.S. at 354. According to the Supreme Court, although a political party has a right to select its own candidates, "[t]hat a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights." *Id.* at 359. The Court rejected the party's argument that the ban "burdens [that party's] right to communicate its choice of nominees on the ballot on terms equal to those offered other parties, and the right of the party's supporters and other voters to receive that information." *Id.* at 362 (alteration, citation, and internal quotation marks omitted). The Court stated:

> It is true that Minnesota's fusion ban prevents the New Party from using the ballot to communicate to the public that it supports a particular candidate who is already another party's candidate. In addition, the ban shuts off one possible avenue a party might use to send a message to its preferred candidate because, with fusion, a candidate who wins an election on the basis of two parties' votes will likely know more – if the parties' votes are counted separately – about the particular wishes and ideals of his constituency. We are unpersuaded, however, by the party's contention that it has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate. Ballots serve primarily to elect candidates, not as forums for political expression.

*Id.* at 362-63.

Minnesota's law, which forbids candidates from appearing multiple times on the ballot, imposes a more severe restriction than Section 7-104. In New York, candidates that have been nominated by two parties, as well as by the Tax Revolt Party,

---

[6] Plaintiffs appear to bring both a facial and an as applied challenge to Section 7-104(4). Outside of the context of challenges to restrictions on free speech, "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (alteration in original) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)); *see also id.* (applying the *Salerno* standard to a challenge of an election law under the First Amendment). In this case, although plaintiffs appear to bring both a facial and an as-applied challenge to the statute, plaintiffs have not claimed that there is no set of circumstances that Section 7-104(4) is constitutional. In any event, for the reasons discussed *infra*, plaintiffs' claim fails whether it is styled as a facial challenge or an as-applied challenge.

6

are not being denied access to the ballot, nor are they restricted from appearing multiple times as in Minnesota. Instead, the only restriction relevant to this case that New York imposes is that a candidate that has been nominated by more than one political party cannot also appear on the ballot on a line for an independent body. However, New York allows the name and emblem of the independent body to appear next to the candidate's name.

Therefore, the law does not impose a severe restriction on the right of the plaintiff candidates to associate with other members of the Tax Revolt Party because Section 7-104 does not restrict their ability: (1) to be nominated by the Tax Revolt Party; (2) appear on the ballot as a member of the Tax Revolt Party; or (3) fundraise or make speeches with other members of the Tax Revolt Party. Most importantly, the law does not deny these candidates the ability to get elected, as nearly all of the plaintiff candidates will appear at least twice on the ballot in the upcoming election. If denying the ability of an individual to "appear on the ballot as a particular party's candidate does not severely burden that party's associational rights," *id.* at 359, then requiring an individual nominated by two parties to be designated as a candidate of an independent body in a less prominent fashion cannot severely burden that candidate's rights.

In addition, the rights of the plaintiff voter are not being severely restricted. The Supreme Court in *Timmons* rejected the plaintiff voter's argument that election laws must allow voters to cast ballots for parties, as well as candidates, stating that "[b]allots serve primarily to elect candidates, not as forums for political expression." *Id.* at 363.

Two other courts in this district have ruled on similar or identical challenges to Section 7-104, and both determined that the law's restrictions were not severe. In *Dillon*, the plaintiff sued for the same reason as in this case; he was nominated by two parties and one independent body, and, thus, New York Election Law restricted him to two lines on the ballot. Judge Gleeson held that the law placed a "minor burden" on "independent bodies and their candidates." 2005 WL 2847465, at *8. In *Credico v. N.Y. Board of Elections*, No. 10 CV 4555, 2013 WL 3990784 (E.D.N.Y. Aug. 5, 2013) (Report and Recommendation), a plaintiff candidate was nominated by two independent bodies (but no parties) and was required by New York Election Law to only appear on the ballot one time – next to the name of only one independent body – with the other independent body's emblem appearing above his name. In her Report and Recommendation, Magistrate Judge Pollak found that the "burdens imposed by Section 7–104(4)(e) are not severe . . . ." *Id.* at *20.

Accordingly, this Court concludes that the burdens imposed by Section 7-104 on the plaintiff candidates and the plaintiff voter are not severe.[7]

---

[7] Savinetti further argues that Section 7-104(4)'s restrictions apply only to mechanical voting machines, and do not apply to the electronically scanned paper ballots that will be used in this upcoming election. Instead, according to Savinetti, Section 7-106 should apply, and the enforcement of Section 7-104(4) to electronically scanned paper ballots is unconstitutional. (Mem. of Savinetti at 2-4.) Savinetti has submitted documentation demonstrating that New York City has declined to apply Section 7-104 to this upcoming election. (*See* Decl. of Louis G. Savinetti Ex. A, Statement of the Commissioners of Elections in the City of New York ("The Commissioners of Elections in the City of New York determined that with respect to the form of Election Day Paper Ballots used with the poll site optical scanning voting system, Section 7-106 of the New York State Election Law . . . is the applicable and controlling statutory provision for all such ballots.").) As an initial matter, the Court notes that

7

2. Balancing the State's Interests with the Burden on Plaintiffs' Rights

Although the burdens imposed on plaintiffs are not severe, this Court must still balance the restrictions imposed by the law against the State's asserted interests. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) ("However slight [a] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." (citation and internal quotation marks omitted)); *Burdick*, 504 U.S. at 434; *Price v. N.Y. Bd. of Elections*, 540 F.3d 101, 108-09 (2d Cir. 2008) (reviewing Supreme Court precedent and stating that a court is not to apply "pure rational basis review" by considering "every conceivable basis which might support the challenged law," but instead, to "actually weigh the burdens imposed on the plaintiff against the precise interests put forward by the State, [taking] into consideration the extent to which those interests make it necessary to burden the plaintiff's rights" (citations and internal quotation marks omitted)).

The State asserts that it "has a legitimate interest in having a clear and uncluttered ballot that reduces the risk of voter confusion," and, thus, the State should not have to include a line for the Tax Revolt Party in every election in which it nominated a candidate. (Intervenor State of N.Y. Mem. of L. in Supp. of the Constitutionality of N.Y. Elec. Law § 7-104 ("State Mem.") at 13.) Biamonte elaborates on this point, claiming that the "statute serves to discourage major parties from exploiting New York State's fusion voting scheme by creating various sham entities to nominate the major party's candidates as candidates of newly invented independent bodies . . . ." (Biamonte Opp'n at 13.)

Under *Timmons*, New York's asserted interest in promoting ballot integrity and reducing voter confusion is a legitimate goal. *See Timmons*, 520 U.S. at 364 ("States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials."). After weighing the burden imposed on the plaintiff candidates and the plaintiff voter against the State's proffered interest in ballot integrity, the Court holds that Section 7-104 does not violate plaintiffs' First and Fourteenth Amendment rights, either facially or as applied to the facts of this case. Taken to its logical extreme, plaintiffs' position would allow for a near-unlimited number of independent parties and ballot lines, with ballots in New York being filled with the names of each major party candidate repeated numerous times, each major party trying to place its candidate on the ballot in one more row than another major party's candidate. In an effort to maintain ballot integrity, New York has placed a rational restriction on the number of ballot lines a candidate can appear on, and the Court finds that the State's interest outweighs the burden placed on First and Fourteenth Amendment rights.

At oral argument, in response to the Court's concern that plaintiffs' position

---

whether Section 7-106 should apply to these ballots is purely a question of state law. On that issue, there is nothing in the plain language of the statutes that requires the State Board and the County Board to apply Section 7-106 in favor of Section 7-104 for electronic ballots. Specifically, the Third Department recently held that the requirements of Section 7-106 are not "inconsistent with or abrogate the ballot requirements set forth in Election Law § 7-104." *Guidarelli v. Brassard*, 88 A.D. 3d 1147, 1149 (3d Dep't 2011). In any event, to the extent that plaintiffs also argue that the application of Section 7-104 to electronically scanned ballots is unconstitutional, the Court disagrees. Plaintiff has failed to persuasively argue how the application of Section 7-104 to electronically scanned ballots, rather than Section 7-106, is a constitutional violation.

8

would cause a complete undoing of a fair and rational ballot, plaintiffs argued that the State could restrict the number of times a candidate could appear by increasing the number of signatures required to place an independent body's candidate on the ballot. In short, plaintiffs argue that New York has made the wrong choice about how to promote ballot integrity. The Court need not make such a policy determination. "[B]ecause the burdens [Section 7-104] imposes on the [the plaintiff candidates' and the plaintiff voter's] rights are not severe, the State need not narrowly tailor the means it chooses to promote ballot integrity." *Id.* at 365. Instead, all that is required is that the State's expressed legitimate interest outweighs the burdens imposed on plaintiffs' rights, and, for the reasons discussed *supra*, the Court finds that it does.[8]

In *Dillon*, the State argued that limiting the number of times a candidate could appear was necessary due to restrictions on the size of the ballot. *See Dillon*, 2005 WL 2847465, at *5 (stating that "defendants' ballot space concerns are real" and holding that state's interest outweighs the burden of the law). Here, plaintiffs argue that the State's expressed interest in limiting the number of lines on the ballot is inapplicable to this year's election in Nassau County because, even if the Tax Revolt Party received a separate line on every ballot throughout the County, there is enough space to fit every party and independent body on one-side of a ballot. However, the Court does not rely on this justification in upholding the law. Although the State has tangentially argued that striking down this law would lead to increased costs in this election, the State does not justify the law on the basis of space as it did in *Dillon*. Instead, the State repeatedly argues that the restriction is to prevent ballot confusion and promote ballot integrity, regardless of the potential space and cost concerns in this election. In addition, even if this election would not require the printing of larger or double-sided ballots, the State should not be required to modify its ballot requirements every election depending on how many independent bodies nominated candidates.

Accordingly, because the State's expressed interest in minimizing ballot confusion and promoting ballot integrity outweighs the burden placed on the plaintiff candidates and the plaintiff voter, the Court finds that the Nassau County Board of Elections is not required to include a Tax Revolt Party line on every ballot in which a Tax Revolt Party candidate has been nominated by two political parties.[9]

Having found that the Tax Revolt Party should not receive a line on every ballot, the Court turns to one additional question:

---

[8] The Court notes that plaintiffs' suggested solution would actually make it more difficult for independent bodies to place candidates on the ballot, and, thus, would impose a greater restriction on constitutional rights than Section 7-104's current requirements.

[9] Section 7-104(4)'s restrictions do not apply to all elections in New York State. Instead, "the name of a person who is nominated for the office of governor, or state senator, or member of assembly, shall appear on the ballot as many times as there are parties or independent bodies nominating him or her . . . ." N.Y. Elec. Law. § 7-104(5). At oral argument, plaintiffs argued that the State has violated the Equal Protection Clause by allowing a candidate's name to appear an unlimited number of times during elections for state-wide office, while restricting it for local office. However, the State has a legitimate reason for this distinction: if an independent body receives 50,000 votes in a gubernatorial election, it becomes a political party under New York law and gains all the rights associated with that distinction. Because New York could ban fusion politics entirely, it is not unconstitutional for the State to place some restrictions on fusion politics in some elections and not in others.

9

whether Section 7-104(4)(d) violates the First and Fourteenth Amendments when it forbids a candidate's name from appearing in the Tax Revolt Party row in situations where the Tax Revolt Party will already be receiving a row on the ballot. Under the reading of the statute advanced by the State, where the Tax Revolt Party will already receive a line on the ballot (because, for example, a candidate in one election has only received the nomination of one political party and the Tax Revolt Party), candidates in other elections on that same ballot that are nominated by the Tax Revolt Party and by two parties will not have their name placed in the Tax Revolt Party row. This will result in a blank space in the Tax Revolt Party row for that election, even though the Tax Revolt Party has nominated an individual for that office. At oral argument, counsel for all parties appeared to agree that this situation would affect at least one plaintiff candidate (and possibly a second, depending on a lawsuit challenging the signatures gathered by plaintiff candidate Steven Rhoads).[10]

As to this scenario, plaintiff contends that, if the State is genuinely interested in reducing ballot confusion, having a blank next to an independent body that validly nominated an individual for elected office actually promotes ballot confusion by indicating to voters that the Tax Revolt Party has not nominated someone for an elected office when they in fact have. This argument has been accepted by at least two courts in finding Section 7-104 to be unconstitutional. *See Credico*, 2013 WL 3990784, at *23; *Sherwood v. N.Y. Bd. of Elections*, 847 N.Y.S.2d 428, 431 (N.Y. Sup. Ct. Dutchess Cnty. 2007); *see also Dillon*, 2005 WL 2847465, at *7 (stating in dicta that leaving a blank space when an independent body had nominated a candidate for that office to be an "anomalous" and "absurd" result and a "remorseless reading of the statute").

However, those courts did not address the salient point raised by counsel for Biamonte at oral argument. Biamonte's counsel stated that the County must enforce this requirement even when it would lead to a blank space because failure to enforce these requirements would allow parties to circumvent Section 7-104's legitimate requirements. In other words, if this exception were allowed, a party and an independent body could nominate an individual to an office that the nominee is unlikely to win solely to guarantee that competitive nominees receive extra ballot lines. The Court agrees. Allowing this exception could potentially defeat the entire purpose of Section 7-104 by encouraging parties to nominate individuals for some elections in order to promote candidates in other elections. To avoid creating such an incentive to circumvent the purpose of Section 7-104, there is a rational explanation for not creating an exception to the statute for this type of scenario. Moreover, plaintiffs have submitted no evidence that a blank space on the Tax Revolt Party line on the ballot for a particular office creates any confusion when the emblem of the Tax Revolt Party appears next to a candidate's name on a different line for the same office. In any event, even assuming *arguendo* that having a blank in the Tax Revolt Party row might potentially create some additional modicum of confusion, the State's interest in promoting ballot integrity and preventing parties from circumventing Section 7-104's legitimate requirements significantly outweighs the burden imposed by a blank space in the Tax Revolt Party row. Accordingly, Section 7-104 is constitutional

---

[10] In a letter dated October 1, 2013, counsel for Biamonte informs the Court that the nominating petition for Steven Rhoads was ruled invalid by the Supreme Court of the State of New York, County of Nassau, on September 20, 2013. (*See* Letter, Oct. 1, 2013, ECF No. 30.)

10

even where it results in the creation of a blank space in a row in which an independent body has nominated a candidate for that office.

\*\*\*

The Court understands that it must proceed with great caution when candidates for elected office and voters argue that an election law restricts their constitutional rights, as "voting is of the most fundamental significance under our constitutional structure." *Burdick*, 504 U.S. at 433 (citation and internal quotation marks omitted). However, "[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* (citation and internal quotation marks omitted). The burdens imposed by Section 7-104 are justifiable regulations with the goal of promoting "fair and honest" elections. The statute does not: (1) restrict a candidate from appearing on the ballot; (2) forbid a candidate from identifying with the Tax Revolt Party on the ballot; or (3) deny citizens the right to vote for any of the plaintiff candidates. Having weighed the non-severe burdens imposed on the plaintiff candidates and the plaintiff voter against New York's legitimate goal of promoting ballot integrity and reducing voter confusion, the Court finds, based upon the record before it, that Section 7-104 does not violate plaintiffs' First and Fourteenth Amendment rights. Thus, plaintiffs' motion must fail because they have failed to demonstrate a likelihood of success on the merits or even sufficiently serious questions going to the merits to make them a fair ground for litigation.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction and a temporary restraining order is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 2, 2013
        Central Islip, NY

\* \* \*

Plaintiffs are represented by Peter A. Bee and Deanna Darlene Panico, Bee Ready Fishbein Hatter & Donovon LLP, 170 Old Country Road, Suite 200, Mineola, NY 11501. The State Board is represented by Paul Michael Collins, NY State Board of Elections, 40 N Pearl St, Albany, NY 12207. The County Board is represented by Andrew Kenneth Preston and Alpa Sanghvi, Office of the Nassau County Attorney, 1 West Street, Mineola, NY 11501. Savinetti is represented by Steven G. Leventhal, Leventhal, Cursio, Mullaney & Sliney, LLP, 15 Remsen Avenue, Roslyn, NY 11576. Biamonte is represented by Steven R. Schlesinger and Jared Andrew Kasschau, Jaspan, Schlesinger & Hoffman, LLP, 300 Garden City Plaza, 5th Floor, Garden City, NY 11530. The State is represented by Ralph Pernick, New York State Attorney General, 200 Old County Road, Suite 240, Mineola, NY 11501.